## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

JIMMY QUINN,                    )
                                )
            Movant,            )
                                  )
       v.                      )          Case No. 1:06CV00062 ERW
                                  )
UNITED STATES OF AMERICA      )
                                  )
          Respondent.       )

## MEMORANDUM AND ORDER

This matter comes before the Court upon Jimmy Quinn's ("Petitioner") Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1], filed on May 1, 2006. The United States of America ["Respondent"] filed the Government's Answer to Petition to Vacate, Set Aside, or Correct Sentence [doc. #7] on October 12, 2006.

## I.      BACKGROUND FACTS

Petitioner was indicted in the Eastern District of Missouri, Southeastern Division by a grand jury for the charge of being a previously convicted felon in possession of a firearm, which is a violation of Title 18, United States Code, Section 922(g)(1). Petitioner filed a motion to suppress evidence and statements. That motion was overruled after a hearing on May 30, 2003. Petitioner was found guilty by a jury, and on November 19, 2003, was sentenced to a term of imprisonment of 180 months.

After sentencing, Quinn appealed his conviction and sentence to the Eighth Circuit Court of Appeals. His attorney, Jeffrey J. Rosanswank filed an *Anders* brief[1] and moved to withdraw. The

---

[1] In *Anders v. California*, the Supreme Court established a procedure for cases involving appointed counsel that had no merit. *See* 386 U.S. 738 (1967); *Person v. Ohio*, 488 U.S. 75

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

motion to withdraw was granted, and thereafter the Eighth Circuit affirmed Quinn's conviction and sentence.[2] On May 1, 2006, Petitioner filed the present Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. As grounds for relief, he asserts:

> (1) ineffective assistance of counsel;

> (2) illegal search and seizure;

> (3) violation of Fifth Amendment *Miranda* rights and privilege against self incrimination;

> (4) perjured, false and misleading witness testimony violating due process rights.[3]

For the reasons set forth below, the Court concludes that all of the above Grounds are without merit. Accordingly, the Court will dismiss Jimmy Quinn's Petition under 28 U.S.C. § 2255.

## II.    STANDARD OF REVIEW: RELIEF UNDER 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. Claims based on a federal statute or rule, rather than on a specific constitutional guarantee, "can be raised on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*,

---

(1988). If an attorney finds the case to be frivolous, he or she should advise the court of such and request permission to withdraw. *Id.* This request is accompanied by a brief that is to refer to anything in the record that may support the appeal. *Id.* The court will review the proceedings to decide of the case is frivolous. *Id.* If so, the court may grant counsel's request to withdraw. *Id.*

[2] *United States v. Quinn*, 130 Fed. Appx. 832 (8th Cir. 2005).

[3] In his complaint, Petitioner asserts six grounds for relief. As some of these grounds are related or overlapping, the Court has created these four categories to encompass all of Petitioner's grounds for relief.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

512 U.S. 339, 354 (1994) (internal quotations and citations omitted).

Section 2255 claims may also be limited by procedural default. A petitioner "cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). Moreover, even constitutional or jurisdictional claims not raised on direct appeal are procedurally defaulted unless the petitioner can demonstrate either cause for the default and actual prejudice, or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (*citing United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)). An exception to this general prohibition exists only where the alleged error constitutes a fundamental defect that inherently results in the complete miscarriage of justice. *United States v. Manko*, 772 F.2d 481, 482 (8th Cir. 1985).

## III.    DISCUSSION

The Court must hold an evidentiary hearing to consider claims in a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (*citing* 28 U.S.C. § 2255). Thus, a petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (*quoting Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "'without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Shaw*, 24 F.3d at 1043. The Court notes that Petitioner's claims can be conclusively determined based upon the Petition, the files, and the records of the case. Therefore, no evidentiary hearing will be held. *See Shaw*, 24

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

F.3d at 1043.

**A.      THE PETITION WAS TIMELY FILED**

The government contends that Movant's petition is untimely, however, it is not.  The judgment of conviction became final and the limitation period began to run on June 13, 2005, when the Supreme Court denied Movant's petition for writ of certiorari.  Movant filed his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on May 1, 2006, a date that falls within the one-year limitation period.  As a result, the Court has jurisdiction over the issues raised in the Petition.

**B.      INEFFECTIVE ASSISTANCE OF COUNSEL**

A § 2255 petition may be based upon a violation of the Sixth Amendment right to effective assistance of counsel.  The Supreme Court has ruled that claims of ineffective assistance of counsel can be raised for the first time in a federal district court by § 2255 motion, where an evidentiary hearing is available, whether or not those claims could have been brought on direct appeal.  Wright & Miller, *Federal Practice and Procedure*, §594.1, at 710; *see Massaro v. United States*, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").  This provides an exception for claims of ineffective assistance of counsel to the general procedural default rule.  Claims of ineffective assistance of counsel are generally excepted because a petitioner's attorney may have served as counsel both at the trial and appellate levels of the case, and so would not likely claim his own ineffective assistance on appeal.  Wright & Miller, *Federal Practice and Procedure*, §594.1, at 710.  "Absent unusual circumstances, showing of ineffective assistance of counsel satisfies both cause and prejudice

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

requirements for raising constitutional issue for first time on collateral review; however, to establish ineffective assistance of counsel, defendant still faces [a] heavy burden." Wright & Miller, *Federal Practice and Procedure*, § 594.1, at 710 (*citing United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). Through his motion, Petitioner appears to raise the following grounds for relief based upon the ineffective assistance of counsel:

(1) failing to investigate all known eyewitnesses;
(2) failing to subpoena all eyewitnesses known to aid in the defense;
(3) failing to investigate, interview and complete background checks on government informants and government agents;
(4) not procuring funds to retain an expert to commission a report on Petitioner's mental health and mental incapacities;
(5) not subpoenaing background report by caseworker or psychologist detailing mental health and mental incapacities from age twenty-one to the present;
(6) not subpoenaing police radio call sheets and patrol car signout sheets;
(7) failing to investigate alleged purchase of firearm and true owner;
(8) failing to object to the selection of a police officer as a member of the jury and as jury foreman;
(9) not securing forensic fingerprint evidence from police;
(10) not calling eyewitnesses to testify that police testimony was perjured;
(11) failing to cross-examine perjured police testimony;
(12) failing to question police as to why no fingerprints were taken;
(13) failing to question police as to why they failed to investigate the illegal firearm sale;
(14) not providing a defense as counsel supported all prosecution actions;
(15) not arguing all prosecution motions and stipulations;
(16) failing to take the time to explain paperwork to Petitioner;
(17) failing to read aloud or communicate clearly on all motions, forms, or actions;
(18) failing to ensure that Quinn had an understanding of all of the documents he signed;
(19) failing to make reasonable choices as to what would be the Petitioner's best defense;
(20) not allowing Petitioner take the stand;
(21) failing to allow all evidence to be presented regarding what happened the night of the arrest;
(22) not telling the truth to Petitioner as to what the result of his testimony would be;
(23) failing to believe the prior statements of Quinn, which resulted in counsel failing to bring important facts to the court's attention;
(24) not showing that the police used illegal procedures;
(25) not making an attempt to secure the presence of minority race jurors on the jury;
(26) failing to introduce evidence that the residence was frequented by many people and that Petitioner was not the sole individual with access to the property;
(27) not raising reasonable doubt as to Petitioner's guilt;

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(28) failing to show that Petitioner was never charged or convicted of a drug charge related to the drug traffic at 229 Young Street;

(29) withholding exculpatory evidence from the court and Petitioner;

(30) failing to challenge the accuracy of the psychological report;

(31) failing to challenge erroneous information in Petitioner's presentence report;

(32) not calling defense witnesses to testify at sentencing in order to contradict witness testimony;

(33) failing to advise the court of prosecution misconduct;

(34) not raising ineffective assistance of pretrial counsel on direct appeal;

(35) not raising government misconduct on direct appeal;

(36) failing to correct errors in the record on direct appeal and in the District Court;

(37) failing to investigate exculpatory evidence for direct appeal.

In *Strickland v. Washington*, the Supreme Court held that a showing of ineffective assistance of counsel requires a petitioner to demonstrate; (1) that counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) that "counsel's deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984); *see also Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). To prove ineffective assistance of counsel, under the first prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. When evaluating counsel's performance, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even if sufficient proof of the first prong exists, relief may only be obtained if a petitioner also proves that the deficient performance prejudiced the case. *Id.* at 697. The Court may address the two *Strickland* prongs in any order, and if a petitioner fails to make a sufficient showing of one prong, the Court need not address the other prong. *See Strickland*, 466 U.S. at 697; *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) ("If we can answer 'no' to either question, then we need not address the other part of the test."). The Court finds that all of Petitioner's allegations of ineffective assistance of counsel fail to satisfy at least one prong of the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Strickland* test.

### 1.   FAILURE TO INVESTIGATE AND FAILURE TO CALL EYEWITNESSES

Claims 1, 2, 10, 21, 32, and 37 all relate to alleged ineffective assistance of counsel as a result of his attorney's failure to investigate and call eyewitnesses. However, Petitioner has not provided the Court with any information as to the identity of an eyewitness, what they would say, or how they would have aided in his defense. Additionally, the affidavit of Jeffrey Rosanswank, Petitioner's trial counsel, states that there were no witnesses to the events which occurred at the house where the firearm was discovered. Since Petitioner does not present any evidence of an eyewitness his attorney failed to investigate or subpoena, the Court cannot determine whether counsel's performance was deficient.

Claims 3, 6, 9, also relate to the alleged failure of counsel to investigate. Petitioner asserts that Mr. Rosanswank failed to investigate government informants and agents, that he failed to subpoena police radio call sheets and patrol car sign-out sheets, and that he failed to secure forensic fingerprint evidence from the police. As no government informants were involved in the police investigation, there certainly was no error in failing to investigate government informants. Counsel did prepare for his questioning of the two detectives who were involved in the investigation, and there was nothing deficient in his preparation. Petitioner fails to assert that the verdict would have been different had his attorney completed further investigation into police radio call sheets, patrol car sign-out sheets or fingerprint evidence. As a result, the Court cannot determine whether counsel's failure was unreasonable, and, thus, whether his performance was deficient.

In claims 4 and 5, Petitioner challenges his attorney's investigation of his mental health. Counsel arranged, and Petitioner underwent a formal psychiatric evaluation. This evaluation

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

determined that Petitioner had an I.Q. of 63, a spelling ability at the first grade level, and reading skills at the kindergarten level.  The prosecution was willing to stipulate to Petitioner's I.Q., reading level and speaking ability, and to the fact that Petitioner was "functioning in the borderline range of intellectual activity."  As a result, Petitioner's counsel determined that there was no need for any additional investigation or testing regarding Petitioner's mental health.  Counsel believed that these stipulations were in the best interests of his client.  In these claims, Petitioner is attempting to put Mr. Rosanswank's trial strategy at issue.  *Payne v. United States*, 78 F.3d 343, 345 (8th Cir. 1996).  When an attorney's trial strategy is at issue, the Court presumes that effective assistance was provided "and will not second-guess strategic decisions or exploit the benefits of hindsight."  *Id.*  Additionally, Petitioner fails to state what these additional reports would have uncovered.  As a result, the Court cannot determine whether counsel's failure was unreasonable, and, thus, whether his performance was deficient.

Finally, in claim 7, Petitioner asserts that his counsel was ineffective for failing to investigate the alleged purchase of the firearm and the true owner of the firearm.  Petitioner again fails to state what this additional investigation would have uncovered, and as a result, the Court cannot determine whether this failure was unreasonable and if counsel was deficient.  Regardless, this claim would also certainly fail under the second prong of the *Strickland* test as there is no evidence that this failure to investigate prejudiced Petitioner's defense.  *Strickland*, 466 U.S. at 687.  At the house and at the police station, Petitioner stated that the firearm was his, and these statements formed the basis for his conviction.  Counsel's decision not to introduce evidence regarding the purchase of the firearm did not prejudice Petitioner.

Counsel was not ineffective for his failure to investigate.  Although Petitioner does make some conclusory statements regarding the prejudicial effect of Mr. Rosanswank's alleged failure

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to conduct a proper pre-trial investigation, Petitioner does not actually demonstrate any prejudice. He does not state how a different investigation would have changed the verdict; he does not indicate that the verdict would have been different had certain witnesses been interviewed; he does not indicate that the jury would have come to a different decision if they had heard any additional information; and he does not indicate the nature of the evidence his attorney failed to investigate or how such information would have contradicted the weight of the evidence. Because Petitioner is unable to demonstrate that some different action on the part of trial counsel with regard to the pre-trial investigation would have actually changed the verdict in this case, he has failed to show prejudice and thus fails on the second *Strickland* prong.

### 2. *FAILED TO PROPERLY QUESTION WITNESSES*

Claims 11, 12, 13, and 24 all relate to counsel's alleged failure to properly question witnesses. This again presents an issue of trial strategy. When counsel's trial strategy is at issue, the Court presumes that effective assistance was provided "and will not second-guess strategic decisions or exploit the benefits of hindsight." *Payne*, 78 F.3d at 345. The Court has reviewed the trial transcript and believes that counsel attempted to discredit these witnesses, and that his performance was certainly not deficient.

### 3. *INEFFECTIVE COMMUNICATION WITH CLIENT*

In claims 16, 17, and 18, Petitioner asserts that counsel failed to explain paperwork, didn't read documents aloud and generally failed to communicate in a manner that ensured that Petitioner understood all motions, forms, documents and actions. Mr. Rosanswank denies these allegations in his affidavit, stating that the "documents were relatively short and precise, and I personally explained both stipulations to Mr. Quinn prior to requesting his signature on same . . . I am

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

completely satisfied that Mr. Quinn understood what each stipulation said and meant prior to affixing his signature." Even assuming that Mr. Rosanswank failed to explain paperwork and didn't read documents aloud to Petitioner, Petitioner's claim fails because he fails to assert in his claim that he did not actually understand any of these documents.

These claims do not satisfy the second prong of the *Strickland* test as there is no evidence that "counsel's deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Petitioner does not state how further explanation or having counsel read these documents aloud would have made him choose not to accept the stipulations that were offered by the prosecution. Petitioner does not indicate that the verdict would have been different had he not agreed to the prosecution stipulations. These stipulations were in Petitioner's best interests as they prevented the prosecution from presenting evidence of Petitioner's prior criminal record and prevented the prosecution from cross-examining Petitioner's mental health findings. Because Petitioner is unable to demonstrate that some different action on the part of trial counsel would have actually changed the verdict in this case, he has failed to show prejudice and thus fails on the second *Strickland* prong.

### 4. COUNSEL PREVENTED PETITIONER FROM TESTIFYING

Claims 20, 21, 22, and 23 all relate to Petitioner's allegation that his attorney prevented him from testifying. As detailed in his affidavit, Mr. Rosanswank recommended to Petitioner that he not testify for several reasons. These reasons were strategic, such as preventing the evidence of Petitioner's prior convictions from being disclosed to the jury, Mr. Rosanswank's fear that Petitioner may be an uncontrollable and hostile witness, and because Mr. Rosanswank realized that his client's credibility was likely to be impeached by the admission of evidence of his prior

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

convictions. Additionally, the trial transcript clearly shows that Petitioner understood that he had a right to testify at trial, but that he chose not to testify. (Tr. 88-90). Petitioner may now wish that he had testified on his own behalf, but this regret is not sufficient for a finding that counsel was ineffective. The Court "will not second-guess strategic decisions" and finds that counsel's assistance was not deficient. *See Payne v. United States*, 78 F.3d 343, 345 (8th Cir. 1996).

### 5.    *JURY COMPOSITION & JURY FOREMAN*

In Claims 8 and 25, Petitioner complains that his attorney did not attempt to secure the presence of minority race jurors, and failed to object to the selection of a police officer as a member of the jury and as jury foreman. The Court first notes that "a defendant has no right to a 'petit jury composed in whole or in part of persons of his own race." *Georgia v. McCollum*, 505 U.S. 42, 46 (1992) (internal citations omitted). Although "a defendant does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Id.* Petitioner does not assert, and the record does not provide any support for a claim that the representation of minorities in the venire was not fair or reasonable or that minorities were in any way excluded from the jury.

Mr. Rosanswank's affidavit provides the Court with information about Juror number 4. This juror served as a state police officer for 35 years, and in questioning during voir dire he "assured the court that despite his background, he was certain that he could be fair and reasonable if chosen as a juror." Mr. Rosanswank states in his affidavit that he talked to his client and that "we wanted juror number 4 to stay on the jury." He adds that if his client had requested that a juror be struck, he would not have ignored the request.

A decision regarding what jurors should be challenged with peremptory strikes is a question of trial strategy, and the court will not second-guess counsel's decisions. *See Payne v. United States*, 78 F.3d 343, 345 (8th Cir. 1996). Additionally, the fact that this juror or that any

11

juror ends up as jury foreman does not demonstrate ineffective assistance of counsel. Neither Mr. Rosanswank nor Petitioner could have anticipated that this juror would have been selected as jury foreman, and the selection of any particular juror as jury foreman does not demonstrate juror bias or ineffective assistance of counsel. The fact that a peremptory strike was not used against juror number 4 and that juror number 4 was eventually selected as jury foreman in no way indicates that Mr. Rosanswank's representation was deficient. There is no indication that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

### 6.	*INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL*

In claims 31, 34, 35 and 36, Petitioner asserts that his counsel provided ineffective assistance on his direct appeal. He asserts that counsel failed to raise issues of government misconduct, failed to correct errors in the record, failed to challenge erroneous information in Petitioner's pre-sentence report, and did not raise the issue of ineffective assistance of pretrial counsel. The Court reviewed the Anders Brief that Petitioner's counsel filed on direct appeal, and determined that this brief did raise issues of government misconduct. As a result, the Court will not consider this claim. To prevail on his other claims of ineffective assistance of counsel on direct appeal, Petitioner must demonstrate (1) that counsel's performance was constitutionally deficient, and (2) that there is a reasonable probability that, but for counsel's errors, the outcome of the appellate proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

The Anders brief does not allege that pretrial counsel was ineffective. This does not mean, however, that counsel's performance was constitutionally deficient. Counsel's decision not to raise a claim of ineffective assistance of counsel on direct appeal does not result in a procedural

12

default.  *Massaro v. United States*, 538 U.S. 500, 508 (2003).  Additionally, even if these allegations of ineffective pretrial counsel had been raised, the Eighth Circuit almost certainly would not have considered these claims as they "ordinarily defer ineffective assistance of counsel claims to 28 U.S.C. § 2255 proceedings."  *United States v. McAdory*, 2007 WL 2492678 (8th Cir. September 6, 2007) (*quoting United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003)).  As a result, this claim fails the second prong above as there is no reasonable probability that the result of the appellate proceedings would have been different had claims of ineffective pretrial counsel been raised.

Petitioner alleges that his counsel was ineffective for failing to challenge errors in the pre-sentence report and failing to correct errors in the record.  However, Petitioner has not presented the court with evidence of any errors in the pre-sentence report or in the record.  As a result, the Court is unable to determine whether counsel's performance was deficient, and this claim fails under the first prong above.

### 7.	*REMAINING INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS*

In claims 14, 15 and 27 Petitioner alleges that counsel did not provide him with a defense, agreed to everything the prosecution wanted, and failed to create reasonable doubt regarding the ownership of the firearm.  These claims consist of "conclusions rather than statements of fact." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003).  Conclusory § 2255 claims such as these may be dismissed.  *Id.*  Petitioner does not state how counsel failed to provide him with a defense, he does not state any facts supporting his assertion that his counsel was merely acting as an agent of the prosecution, and he doesn't indicate how counsel could have created such reasonable doubt.  As a result, these claims must fail.

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In claim 19, Petitioner asserts that Mr. Rosanswank did not make a reasonable decision as to what Petitioner's best defense would be. This claim is a direct assault on the tactical decisions of Mr. Rosanswank. As discussed previously, when counsel's trial strategy is at issue, the Court presumes that effective assistance was provided "and will not second-guess strategic decisions or exploit the benefits of hindsight." *Payne*, 78 F.3d at 345. The Court has reviewed the trial transcript and finds that the representation Mr. Rosanswank provided was in no way deficient. There is no indication that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Claims 26 and 28 fail to satisfy the second part of the *Strickland* test. Petitioner fails to show how either evidence that the residence was frequented by many people and that Petitioner was not the sole individual with access to the property (claim 26), or evidence that Petitioner was never charged or convicted of a drug charge related to the drug traffic at 229 Young Street (claim 28) in any way prejudiced the defense. These facts do not contradict the evidence upon which Petitioner's conviction was based, because they fail to actually rebut Petitioner's admissions that the firearm belonged to him. Petitioner does not state how this information would have changed the verdict, nor he does not indicate that the jury would have come to a different decision if they had heard this additional information. Additionally, Petitioner fails to demonstrate how such information would have contradicted the weight of the evidence. Because Petitioner is unable to demonstrate that the admission of this evidence would have actually changed the verdict in this case, he has failed to show prejudice and thus fails on the second *Strickland* prong.

Claim 29 alleges that Mr. Rosanswank withheld exculpatory evidence from the court and Petitioner. However, Petitioner has not presented any indication to the Court of what this

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

exculpatory evidence was, or that there even was any exculpatory evidence.  Petitioner does not indicate that the verdict would have been different had this evidence been presented to the court.  As a result, the Court is unable to determine whether counsel's performance was deficient, and this claim fails under the first prong of the *Strickland* test.

Claim 30 alleges that counsel failed to challenge the accuracy of the psychological report.  However, Petitioner has not presented any evidence that the psychological report was inaccurate.  As a result, the Court is unable to determine whether counsel's performance was deficient in failing to challenge the accuracy of this report, and this claim fails under the first prong of the *Strickland* test.

Petitioner's allegations regarding claim 33, prosecution misconduct, are discussed in more detail below.  However, in claim 33, Petitioner alleges that Mr. Rosanswank was ineffective for failing to bring prosecution misconduct to the attention of the court.  Petitioner's claim fails as he does not indicate that Mr. Rosanswank knew of any such prosecution misconduct.  As a result, the Court is unable to determine whether counsel's performance was deficient, and this claim fails under the first prong of the *Strickland* test.

To prove ineffective assistance of counsel, a petitioner must prove that, despite the presumption of competence, counsel's performance fell "outside the wide range of professionally competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 690.  Petitioner has simply not met this burden.  The Court finds neither deficient performance on the part of counsel nor any indication that the jury's verdict  would have been different "but for counsel's unprofessional errors" *Id.*  Petitioner's claims of ineffective assistance

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of counsel fail.

**C.    ILLEGAL SEARCH AND SEIZURE**

Although Petitioner has separated his claims of illegal search and seizure under a different subheading in his petition, he does not actually make any claims of illegal search and seizure. Instead, this section contains allegations of ineffective assistance of counsel.  These claims are not new or different than the claims Petitioner included under the subheading of ineffective assistance of counsel.   Petitioner is merely reiterating the same points complained of in his claim for ineffective assistance of counsel.

In this section Petitioner claims that Mr. Rosanswank did not properly cross examination prosecution witnesses, failed to procure eyewitness testimony, and details the evidence the jury would have heard if he or an eyewitness had testified.  The Court has already addressed these allegations and declines to consider them for a second time.  The Court find that both prongs of the *Strickland* test are not satisfied and Petitioner's claims of ineffective assistance of counsel fail.

**D.    MIRANDA RIGHTS AND PRIVILEGE AGAINST SELF INCRIMINATION**

Petitioner also argues that he did not make a knowing and intelligent waiver of his *Miranda* rights.  Petitioner has an I.Q. of 63 and a reading level of K1 and asserts that the police forced him to sign the Miranda waiver without explaining it to him.  The evidence presented at the Motion Hearing on May 30, 2003 demonstrated that Detective Blakely advised the Petitioner of his rights, as required by *Miranda*, that he read each right to Petitioner and asked if Petitioner understood.  After each right was read, Petitioner responded that he did understand that right. After acknowledging that he understood all of his rights, Petitioner agreed to answer Detective Blakely's questions and signed the form waiving his rights.

A defendant may waive the rights conveyed in the *Miranda* warning provided that "'the

16

waiver is made voluntarily, knowingly, and intelligently.'"  *United States v. Gallardo*, 495 F.3d 982, 990 (8th Cir. 2007) (*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  Petitioner challenges both the voluntariness of his waiver, as well as whether his waiver was made knowingly and intelligently.

### 1.    *VOLUNTARINESS*

The voluntariness of Petitioner's waiver is in question, as he asserts that he was coerced by police "terroristic tactics."  To find that a waiver was voluntary, a court must "determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception."  *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005).  The Court looks at the totality of the circumstances in order to determine whether Petitioner's "'will was overborne' making his statement involuntary."  *United States v. Bell*, 477 F.3d 607, 612 (8th Cir. 2007) (*quoting United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006)).  After reviewing the interview transcripts, the Court concludes that Petitioner has not shown that his waiver was involuntary.  Petitioner has not demonstrated that he was subjected to terroristic, let alone deceptive or coercive police tactics.  He does not allege that the police coerced his "confession by physical violence or other deliberate means calculated to break [his] will."  *Oregon v. Elstad*, 470 U.S. 298, 312 (1985).  Petitioner alleges that he was misled by "the 'story' that [the police] just wanted to talk to petitioner about guns, and that petitioner would be released and returned" to his home afterward.  The Court fails to see how this was deceptive as the interrogation at the police station was in regards to the weapon found in Petitioner's home and the police took Petitioner home after the interrogation.

Petitioner also claims that his waiver was involuntary in the context of ineffective assistance of counsel.  He alleges that his attorney failed to cross examine Detectives Dee and

Blakely as to their use of physical force, threat of force, excessive and illegal terroristic racial police tactics, illegal questioning, physically stopping him from refusing to sign the statement, offering him a deal that they would rip up paperwork if he found guns, their use of verbal and physical means to confuse Petitioner, pushing him into the residence and the police car, as well as threats at the police station which caused "blinding headaches, mental confusion, and serious physical duress, which brought about incoherent behavior and loss of normal reason."

The claims detailed above present an issue of trial strategy. When counsel's trial strategy is at issue, the Court presumes that effective assistance was provided "and will not second-guess strategic decisions or exploit the benefits of hindsight." *Payne v. United States*, 78 F.3d 343, 345 (8th Cir. 1996). Additionally, Petitioner has not indicated that how the verdict would have been different had this evidence been presented to the court. The Court has reviewed the trial transcript and believes that counsel attempted to discredit these witnesses, and that his performance was certainly not deficient.

### 2. *KNOWING AND INTELLIGENT*

To make a waiver that is knowing and intelligent, a defendant "must have 'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* The Eighth Circuit has held that an individual with and I.Q. in the "low-average" to "borderline" range was "clearly intelligent enough to understand his own rights." *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998). However, the I.Q. score of the defendant in *Turner* would have been approximately 80 to fall between the "low-average" and "borderline" ranges. Petitioner's score of 63 is significantly lower and places him in the "extremely low" range of intellectual functioning. However, the Court also considers that Petitioner had been given his *Miranda* warnings in the course of previous encounters with law enforcement officers. The

18

evidence presented at the motion hearing demonstrated that Petitioner was given *Miranda* warnings on at least two separate occasions before his interrogation by Detective Blakely. *See Correll v. Thompson*, 63 F.3d 1279, 1288 (4th Cir. 1995) (valid waiver by 24 year-old with an I.Q. of 68 in part because of numerous prior experiences with law enforcement and *Miranda* warnings); *Derrick v. Peterson*, 924 F.2d 813, 824 (9th Cir. 1990) (valid waiver by 16 year-old with I.Q. of 62-74 in part because of previous arrests and previous experience with *Miranda* warnings). As a result, the Court is led to believe that the Petitioner's waiver was valid. Additionally, the Court notes that these arguments were raised on direct appeal and were rejected by the Eighth Circuit. *See Quinn*, 130 Fed. Appx. 832, 833 (8th Cir. 2005).

### 3. *NON-CUSTODIAL INTERROGATION*

Petitioner also alleges that he was not given his *Miranda* warning until after the interrogation had ended. Even assuming that this claim is true, it fails as *Miranda* warnings are only required to be given when the suspect is subject to a custodial interrogation, and Petitioner's interrogation was not a custodial interrogation. *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004). To determine if someone is subject to a custodial interrogation the Court must consider "how a reasonable person in the suspect's situation would perceive his circumstances." *Id.* at 662. This requires an inquiry into "the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the individual being questioned." *Id.* at 663 (*quoting Stansbury v. California*, 511 U.S. 318, 323 (1994)).

A review of the evidence presented at the Motion Hearing on May 30, 2003 indicates that the district court's decision to deny Defendant's Motion to Suppress Evidence and Statements was correct. The Petitioner was never placed under arrest, nor was his freedom of movement restrained. Petitioner was never handcuffed. Detective Blakely did not display a weapon during

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the encounter.  Petitioner voluntarily accompanied Detective Blakely to the police station for

questioning after being told that he was not under arrest and that he did not need to accompany

Detective Blakely if he did not wish to do so.  When at the police station, Petitioner's interview

with Detective Blakely took place in an office area where Detective Blakely did not sit between

Petitioner and the door, and where Petitioner was allowed to leave and was driven home at the end

of the interview.  These facts indicate that a reasonable person under the circumstances would

have felt comfortable "'to terminate the interrogation and leave.'"  *Yarborough*, 541 U.S. at 663

(*quoting Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).  That the interrogation took place at the

police station is not sufficient to turn these circumstances into a custodial interrogation.  *See*

*Oregon v. Mathiason*, 429 U.S. 492, 495 (1977); *California v. Beheler*, 463 U.S. 1121, 1125

(1983).  The totality of the circumstances indicate that Petitioner's movement was not restrained in

such a way to make this a custodial interrogation.  As such, Petitioner's claim for relief must fail.

## E.    FALSE AND MISLEADING WITNESS TESTIMONY VIOLATING DUE PROCESS

Petitioner asserts that Detectives Dee and Blakely gave false and misleading testimony at

trial in violation of his due process rights under the Fifth Amendment.  In order to show a violation

of one's due process rights, a defendant must prove that "(1) the prosecution used perjured

testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there

was a reasonable likelihood that the perjured testimony could have affected the jury's verdict."

*United States v. Funchess*, 422 F.3d 698, 701 (8th Cir. 2005) (*citing United States v. Peterson*,

223 F.3d 756 (8th Cir. 2000)).  Even assuming that perjured testimony was used and that

Petitioner can prove the first element above, Petitioner "has provided no proof of the second

*Funchess* requirement."  *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007).  Petitioner has

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

provided no evidence that the prosecution either knew or should have known of the perjury. There is no basis for Petitioner's claim that his due process rights were violated. As such, Petitioner's claim for relief must fail.

Petitioner additionally frames these arguments in the context of ineffective assistance of counsel as Petitioner alleges that counsel did not cross-examine Detectives Dee and Blakely on several different issues. The Court has already addressed these allegations of ineffective assistance of counsel and declines to consider them for a second time. The Court finds that both prongs of the *Strickland* test are not satisfied and Petitioner's claims of ineffective assistance of counsel must fail. The Court has reviewed the trial transcript and believes that Mr. Rosanswank attempted to discredit these witnesses, and that his performance was not deficient.

## IV.    CERTIFICATE OF APPEALABILITY

The Court finds that Movant have not made substantial showings of the denial of a constitutional right, as is required before a certificate of appealability can be issued. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2255 Motion.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Jimmy Quinn's Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Petitioner's § 2255 Petition.

Dated this <u>26th</u> day of October, 2007.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com